Raynell HILL, Individually and as Representative of the Estate of Randina Raye Burleson, Deceased, Appellant,

v.

Chad McKinley BARTLETTE, Appellee.

No. 06–05–00031–CV.

Court of Appeals of Texas, Texarkana.

Submitted Dec. 1, 2005.

Decided Dec. 20, 2005.

543

David Robertson, Longview, for appellant.

Randall D. Goodwin, J. David Crisp, Crisp, Boyd, Poff, Schubert & Burgess, LLP, Texarkana, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice ROSS.

Raynell Hill sued Chad McKinley Bartlette for wrongfully causing the death of her daughter, Randina Raye Burleson. The trial court granted summary judgment in favor of Bartlette. Hill appeals, contending in her sole point of error the trial court erred in granting that judgment.

We affirm the trial court's judgment because Hill failed to negate Bartlette's statute of limitations defense. Also, Bartlette proved as a matter of law that Hill is barred from bringing the current claims because there has been an accord and satisfaction on all claims.

### STANDARD OF REVIEW

The propriety of a summary judgment is a question of law. We therefore review de novo the trial court's decision. *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex. 1994). Summary judgment for a defendant is proper when the defendant negates at least one element of each of the plaintiff's theories of recovery or pleads and conclusively establishes each element of an affirmative defense. *Sci. Spectrum v. Martinez*, 941 S.W.2d 910, 911 (Tex.1997); *Wornick Co. v. Casas*, 856 S.W.2d 732, 733 (Tex.1993).

The movant has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). However, once the movant establishes that it is entitled to summary judgment, the burden shifts to the nonmovant to show why summary judgment should not be granted. *Casso v. Brand*, 776 S.W.2d 551, 556 (Tex.1989).

When a trial court's order granting summary judgment does not specify the ground or grounds relied on for its ruling, summary judgment will be affirmed on appeal if any of the theories advanced are meritorious. *Star–Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex.1995). In this case, the trial court did not specify the grounds relied on for its ruling. We therefore may reverse the granting of summary judgment only if a genuine issue of material fact exists as to each theory Bartlette presented.

### BACKGROUND

Hill lived in El Paso, but her daughter, Burleson, lived with Hill's sister, Jo Collinsworth, and Jo's husband, Jerry Collinsworth, in Upshur County while Burleson attended Kilgore College. Early on December 25, 1999, Burleson was the passenger in an automobile driven by Chad Bartlette in Panola County. Bartlette fell asleep. The car left the roadway and slammed into a concrete culvert. Burleson died less than two hours later.

Jerry[1] had insurance through Texas Farmers Insurance Company on the automobile in which Burleson was riding at the time of the accident. Texas Farmers hired a law firm in anticipation of claims against Bartlette and Jerry. The firm assigned the case to Todd Lessert, an attorney with the firm.

Lessert contacted Jo and prepared documents so that Jo could serve as the temporary administrator of Burleson's estate. Around November 2, 2001, Lessert contacted Hill and asked her to sign a waiver of service. On January 3, 2002, Hill signed the waiver of service in which she agreed that the application to appoint her sister, Jo, as temporary administrator could be heard without further notice to her.

---

1. First names are used to distinguish those sharing the same last name.

On May 24, 2002, Jo, in her capacity as temporary administrator, signed a settlement agreement releasing Bartlette, Jerry, and Texas Farmers from all claims growing out of the accident. In return, Texas Farmers issued a check to Jo for $25,000.00.

After receiving the check, Jo had several conversations with Hill regarding how the money should be distributed. They eventually reached an impasse, and Hill claims she did not receive any of the settlement proceeds.

Three and a half years after Burleson's death, Hill filed the current lawsuit against Bartlette. She asserts wrongful death and survival claims.

Bartlette filed a motion for summary judgment with the trial court. He advanced three theories in support of that motion. One, Hill's claims are barred by the applicable statute of limitations. Two, there has been an accord and satisfaction on all claims barring the current lawsuit. Three, Hill ratified the underlying settlement agreement and therefore is precluded from bringing the current lawsuit.

## STATUTE OF LIMITATIONS DEFENSE

A person must bring suit for a wrongful death or survival claim within two years after the death of the injured person. TEX. CIV. PRAC. & REM.CODE ANN. § 16.003(b) (Vernon Supp.2005). Burleson died December 25, 1999. Thus, the limitations period ended December 26, 2001. The present lawsuit was not filed until June 25, 2003, eighteen months after the limitations period had ended.

Hill agrees the lawsuit was not filed within the limitations period. She contends, however, that the doctrine of equitable estoppel should prohibit Bartlette from asserting a statute of limitations defense.

■ A plaintiff may invoke equitable estoppel to prevent an opponent from prevailing on limitations if the opponent, his or her agent, or representatives make representations that induce the plaintiff to delay filing suit within the applicable limitations period. *Forrest v. Vital Earth Res.*, 120 S.W.3d 480, 486 (Tex.App.-Texarkana 2003, pet. denied) (citing *Cook v. Smith*, 673 S.W.2d 232, 235 (Tex.App.-Dallas 1984, writ ref'd n.r.e.)).

■ Equitable estoppel consists of five elements: (1) a false representation or concealment of material fact; (2) the representation was made with knowledge or the means of knowledge of the true facts; (3) the representation was made to a party without knowledge or the means of knowledge of the true facts; (4) the representation was made with the intention that it would be acted on; and (5) the party to whom the representation was made relied on it to his or her prejudice. *Vills. of Greenbriar v. Torres*, 874 S.W.2d 259, 264 (Tex.App.-Houston [1st Dist.] 1994, writ denied); *Cook*, 673 S.W.2d at 235.

■ Hill bears the burden of raising a fact issue as to each element of equitable estoppel. When the face of a motion for summary judgment shows the action is barred by limitations, the nonmovant bears the burden of producing summary judgment evidence sufficient to raise a fact issue on the affirmative defense of estoppel. *Forrest*, 120 S.W.3d at 486; *see also Gifford v. Bank of Sw.*, 712 S.W.2d 182, 184 (Tex.App.-Houston [14th Dist.] 1986, no writ). If the nonmovant does not raise a fact issue as to every element of equitable estoppel, summary judgment is proper. *See Cook*, 673 S.W.2d at 235.

The cases applying equitable estoppel are cases involving promises by a defendant, which are not intended to be fulfilled, but instead are intended to induce the plaintiff to delay filing the suit until after the limitations period has run. *Forrest*,

120 S.W.3d at 487. In cases involving liability insurance, equitable estoppel is typically asserted when an injured party, based on representations of future payment by an insurance adjuster for the defendant, delays filing suit until the statute of limitations has expired. Then, on expiration of the limitations period, the insurance company refuses payment.

For example, in *Frank v. Bradshaw*, 920 S.W.2d 699 (Tex.App.-Houston [1st Dist.] 1996, no writ), an insurance adjuster allegedly made representations to Frank, the victim of a motor vehicle accident, that there was no time problem with regard to her claim. He allegedly promised Frank that, after the treatment was finished and all of her medical bills were received, he would pay her claim. After the insurance adjuster had received several medical bills from Frank, he sent a letter informing Frank that the statute of limitations had passed and that he would not pay any more claims or expenses. *Id.* The First Court of Appeals found these representations by the insurance adjuster were sufficient to create a question of fact on equitable estoppel and to avoid summary judgment. *Id.; see also Cook*, 673 S.W.2d at 235 (finding that, when adjuster told claimant medical bills would be paid, fact issue raised as to whether adjuster falsely made those statements to induce delay in filing suit).

The issue in the instant case is unique. Here, the insurance company paid the amount promised, but Hill claims she would have timely filed suit if not misled by the insurance company's attorney. Hill claims she established an attorney-client relationship with Lessert. She asserts that, while acting as her attorney, Lessert made misrepresentations on which she relied to her detriment. In particular, she alleges Lessert failed to disclose conflicts of interest, falsely promised she would receive the proceeds of the settlement, and employed an unnecessary probate procedure.

■ Equitable estoppel arises only in situations where one party has refused to do what he or she has a duty to do. *Harwell v. State Farm Mut. Auto. Ins. Co.*, 896 S.W.2d 170, 175 (Tex.1995); *Vrazel v. Skrabanek*, 725 S.W.2d 709, 711 (Tex. 1987). If an attorney-client relationship existed between Lessert and Hill, Lessert would have had a duty to disclose any conflicts of interest materially affecting that relationship. As an agent of Bartlette and Texas Farmers, Lessert already had a duty to avoid making material misrepresentations to Hill. *See Vaughn v. Sturm–Hughes*, 937 S.W.2d 106, 108 (Tex.App.-Fort Worth 1996, writ denied). This is, therefore, a situation in which the doctrine of equitable estoppel might be applied.

*Failure to Disclose Conflicts of Interest*

■ Hill first contends equitable estoppel should be applied because Lessert failed to disclose conflicts of interest. These conflicts allegedly arose when Lessert entered into an attorney-client relationship with Hill. We reject this contention because we find no evidence in the record that an attorney-client relationship was formed within the relevant time period.

■ The events inducing a person to delay a particular action until after a particular date logically must occur before that date. Thus, the only misrepresentations on which Hill could have relied to her detriment must have occurred before December 26, 2001, the end of the limitations period. *See Vills. of Greenbriar*, 874 S.W.2d at 264.

The record contains only one set of communications between Hill and a representative of Bartlette or Texas Farmers that

occurred before December 26, 2001. Around November 2, 2001, Lessert contacted Hill by telephone and asked her to sign a waiver of service in connection with the temporary administration. He then sent her a letter, with the waiver of service enclosed, memorializing the telephone conversation.

The details of the telephone conversation are in dispute. In a deposition, Lessert stated he told Hill he was representing Bartlette and Jerry, and wished to secure a release on their behalf. In her deposition, Hill stated that, while she could not remember the conversation, Lessert only told her he was representing Burleson's estate. She also stated Lessert never told her he was representing Bartlette or Jerry.

The entire letter from Lessert to Hill reads:

Ms. Hill:

Please find enclosed an Affidavit stating you have no objection to Jo Collinsworth being appointed Temporary Administrator of your daughter's estate. Please take the time to review this document, and providing it meets your approval, please sign it in front of a Notary Public, have your signature notarized, and return it to me in the self-addressed stamped envelope also enclosed for your convenience. As we discussed on the telephone, having Jo appointed as Temporary Administrator will allow this proceeding to go far more smoothly and quickly. Should you have any questions about this document or any other matters, please do not hesitate to contact me.

Sincerely,

TODD G. LESSERT

■ The attorney-client relationship is purely contractual. It arises from the clear and express agreement of the parties about the nature of the work to be done and the compensation to be paid. This contract may be implied by the conduct of the two parties. It is necessary that the parties either explicitly or implicitly manifest an intention to create an attorney-client relationship. *Parker v. Carnahan*, 772 S.W.2d 151, 156 (Tex.App.-Texarkana 1989, writ denied).

Hill stated in her deposition she believed Lessert was her attorney. However, there was never any discussion of, or an agreement on, attorney's fees. There was never an agreement on the nature of work Lessert would perform for Hill. Hill never asked Lessert to represent her. Lessert never told Hill that he was her attorney.

Hill cites *Vinson & Elkins v. Moran*, 946 S.W.2d 381 (Tex. App.-Houston [14th Dist.] 1997, writ dism'd by agr.), to support her contention that an attorney-client relationship existed. The facts of that case are dissimilar to the facts presented here.

In *Moran*, the executors of an estate hired the Vinson and Elkins law firm (V & E) to advise them on matters relating to the estate administration. The court held there was legally and factually sufficient evidence to find that, by its conduct, V & E had formed an attorney-client relationship with the Moran beneficiaries of the estate. *Id.* at 405.

The estate beneficiaries attended meetings where V & E attorneys gave the beneficiaries advice regarding taxes and tax consequences. The firm advised the beneficiaries on no less than four distinct legal issues. The attorneys stated they represented "the Moran family, the Moran Estate, the Moran Estate family, [and] Moran Estate interests." The beneficiaries received several mailings directly from V & E. The beneficiaries had "quite a number of contacts" with V & E attorneys. Further, the beneficiaries were in effect paying V & E's legal fees. The firm's fees

were paid out of the expected distributions from the estate based on the pro rata share each beneficiary was expected to receive. *Id.* at 403–04.

In contrast, Hill had only one contact with Lessert before December 26, 2001, a single telephone call. She received only one mailing from Lessert, a letter memorializing that call. Hill never paid any part of Lessert's legal fees, either directly or indirectly. Lessert never advised Hill on any legal matters, other than to ask her to sign a waiver of service. The number and nature of the interactions in this case are different from those in *Moran.*

There is no evidence in the record raising a genuine issue of material fact about whether an attorney-client relationship existed between Hill and Lessert before December 26, 2001. Hill's mistaken impression Lessert was her attorney is not sufficient by itself to create an attorney-client relationship. Because there was no attorney-client relationship, there was no conflict of interest concerning such a relationship that Lessert was required to disclose. Hill has, therefore, failed to raise an issue of material fact with respect to all the elements of equitable estoppel.

*Failure To Receive Settlement Proceeds*

■■■■ Hill alleges that, when Lessert contacted her in November 2001, he told her she would receive all the settlement proceeds. Hill claims she did not receive any of those proceeds. Because of this, she contends Lessert's statement was a false representation that caused her to delay filing suit until after the limitations period.

If Hill did not receive any of the money, it was because of a failed agreement between Hill and her sister, Jo. There is no evidence in the record that Lessert knew or could have known that a future agreement between Hill and Jo would fail and that Hill would not get the settlement proceeds. Thus, Lessert did not have knowledge or the means of knowledge that Hill would not get paid.

Lessert could not have intended for Hill to rely on his false representation if he did not know it was false. Therefore, with regard to this alleged misrepresentation, Hill has failed to raise a genuine issue of material fact with respect to at least two elements of equitable estoppel.

*Necessity of Temporary Administration*

■■■■ Hill contends a temporary administration was not necessary to complete the settlement process. She asserts that either heirship affidavits or a dependent administration could have been used. She contends the decision to use a temporary administration to effectuate the settlement amounts to a misrepresentation.

The decision to employ one particular legal process rather than another is a matter of professional judgment. Even if that decision is not particularly astute, as Hill suggests, it does not amount to a false representation. Hill has therefore failed to show that Lessert made a false representation with regard to this allegation.

Hill has failed to raise a genuine issue of material fact with respect to each element of equitable estoppel. She therefore has not met her burden of proof in order to invoke the doctrine of equitable estoppel to negate Bartlette's limitations defense. Accordingly, the summary judgment was properly granted based on Bartlette's assertion of a statute of limitations defense.

ACCORD AND SATISFACTION

■■■■ Bartlette contends the settlement agreement constitutes an accord and satisfaction on all claims, barring Hill's present lawsuit. Hill contends the settlement agreement does not constitute an accord and satisfaction of her claims. She further contends the settlement agreement is void

because Jo did not have the authority to settle the wrongful death and survival claims.

■■■■■ The conditional tender of payment on a disputed or unliquidated claim may constitute an accord and satisfaction. The general rule of law regarding the conditional tender of payment element necessary to constitute an accord and satisfaction is that the conditional tender must be expressed by acts or declarations with sufficient clarity so that the creditor will know that his or her acceptance of the payment will constitute full payment of the claim. *H.L. "Brownie" Choate, Inc. v. Southland Drilling Co.*, 447 S.W.2d 676, 678–79 (Tex.1969); *see also Jenkins v. Henry C. Beck Co.*, 449 S.W.2d 454, 455 (Tex.1969).

We hold that the language of the settlement agreement was sufficient to constitute an accord and satisfaction.[2] The relevant language reads:

> IT IS EXPRESSLY AGREED AND UNDERSTOOD that the undersigned accepts the payment of the sums mentioned above as a full, complete, final and binding compromise of all claims against the parties released hereby, which involve disputed issues, regardless of whether too much or too little may have been paid. It is expressly agreed and understood that the acceptance of the sum mentioned above is in full AC-CORD AND SATISFACTION of a doubtful and disputed claim. . . .

■■■■ Hill contends the settlement agreement is void because an estate administrator does not have the authority to settle a wrongful death claim. In contrast with a survival claim, a wrongful death claim is an action that belongs to statutory beneficiaries and does not benefit the estate. *Palmer v. Coble Wall Trust Co.*, 851 S.W.2d 178, 181–82 (Tex.1992). However, estate administrators have statutory authority to pursue wrongful death actions on behalf of those beneficiaries if such beneficiaries have not done so on their own behalf within three months after the death of the injured individual. TEX. CIV. PRAC. & REM.CODE ANN. § 71.004(c) (Vernon 1997).

Hill next contends a temporary administrator does not have the authority to settle claims or bring suit on behalf of an estate. Again, there is statutory authority for a temporary administrator to do just that. The Probate Code authorizes the "personal representative" of an estate to "[m]ake compromises or settlements in relation to property or claims in dispute or litigation" on written application to the court. TEX. PROB.CODE ANN. § 234(a)(4) (Vernon 2003).

The Probate Code defines "personal representative" as "executor, independent executor, administrator, independent administrator, *temporary administrator*, together with their successors." TEX. PROB. CODE ANN. § 3(aa) (Vernon 2003) (emphasis added).

Hill also contends the probate court's order did not grant Jo the authority to settle the survival and wrongful death claims. The Probate Code provides, "Temporary administrators shall have and exercise only such rights and powers as are specifically expressed in the order of the court appointing them. . . . Any acts performed by temporary administrators that are not so expressly authorized shall be void." TEX. PROB.CODE ANN. § 133 (Vernon 2003).

The order appointing Jo as temporary administrator granted her the following

---

**2.** *See Hycarbex, Inc. v. Anglo–Suisse, Inc.*, 927 S.W.2d 103 (Tex.App.-Houston [14th Dist.] 1996, no writ), holding that the language, "These payments shall constitute complete fulfillment of our obligation," was sufficient to constitute a full accord and satisfaction.

powers: "To represent the Estate and heirs of Randina Ray [sic] Burleson in all necessary respects regarding any and all claims of the Estate and heirs against Chad Bartlett [sic] and Jerry Collinsworth, arising from an automobile accident on or about December 25, 1999." Hill contends this language did not grant Jo the authority to settle the wrongful death and survival claims. We disagree.

The order expressly grants the power to "represent the Estate and heirs of Randina Ray [sic] Burleson in all necessary respects regarding any and all claims . . . ." We hold that this language is sufficient to convey the power to assert and settle claims. Further, the order specifically mentions the automobile accident that caused Burleson's death. We hold this language is sufficiently specific to include the wrongful death and survival claims arising out of the accident.

Hill further contends a probate court does not have jurisdiction over wrongful death and survival claims. In support of this, Hill cites *Seay v. Hall,* 677 S.W.2d 19 (Tex.1984). In *Seay,* the Texas Supreme Court determined that the proper forum for such cases was in the state district courts. *Id.* at 25. This holding was expressly overruled in *Palmer,* 851 S.W.2d at 181. In *Palmer,* the court recognized that the Legislature had amended the Probate Code following the *Seay* decision to give probate courts jurisdiction over wrongful death and survival claims. *Id.* at 182.

Hill finally contends the settlement agreement should not constitute an accord and satisfaction on her claims because she did not sign the agreement and she did not receive the settlement proceeds. As shown above, Jo had the authority to settle the claims on Hill's behalf; Hill's signature was not necessary. Further, it is undisputed Jo received a $25,000.00 check made payable to the temporary administrator of Burleson's estate. Whether she later distributed the proceeds of that check properly does not alter the nature of the earlier valid settlement agreement.

Jo had the authority to settle the present claims on Hill's behalf. She signed a settlement agreement releasing Bartlette from these claims. In return, she received a check in the amount of $25,000.00 as agreed in the settlement agreement. Accordingly, we hold the summary judgment was proper because there has been an accord and satisfaction on all claims, thereby barring the present lawsuit.

### RATIFICATION

Bartlette also sought summary judgment on the basis that, even if the settlement agreement was voidable or fraudulent, Hill ratified the agreement through her subsequent conduct. We have concluded that the settlement agreement was proper because it was entered into by someone with the authority to do so. Hill was not fraudulently made a party to that agreement. We therefore find it unnecessary to address Bartlette's ratification argument.

### CONCLUSION

Summary judgment was properly based on Bartlette's statute of limitations defense because Hill failed to raise a genuine issue of material fact as to each element of equitable estoppel. Alternatively, summary judgment was proper because Bartlette proved as a matter of law there was a valid settlement agreement constituting an accord and satisfaction on all claims.

Accordingly, we affirm the judgment.

CARTER, J., concurring.

Concurring Opinion by Justice CARTER.

I concur in the judgment of the Court because I agree with the analysis regard-

ing the statute of limitations. My concern is the statement in the opinion that the order granting the temporary administrator the authority to represent the estate and heirs was sufficient to give her the right to settle the claim. The Probate Code states: "[w]hen a personal representative deems it for the interest of the estate, he may, *upon written application to the court, and by order granting authority* ... (4) [m]ake compromises or settlements in relation to property or claims in dispute or litigation." Tex. Prob.Code Ann. § 234(a)(4) (Vernon 2003) (emphasis added). There is no contention that the temporary administrator filed an application requesting the probate court to approve the settlement or that the probate court entered an order specifically authorizing the settlement. I agree that the representative had, by court order, the authority to represent the estate and heirs of the deceased in this case, but once she had negotiated a proposed settlement, she was required to file a written application and to obtain an order from the probate court authorizing her to settle the suit.