

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-13-00037-CV

_____

MASIKA RAY-BROWN, Appellant

V.

LONGVIEW INDEPENDENT SCHOOL DISTRICT, Appellee

On Appeal from the 124th District Court
Gregg County, Texas
Trial Court No. 2012-90-B

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss

# MEMORANDUM OPINION

After the 2010–11 school year, Longview Independent School District (the "District") terminated the probationary contract of Masika Ray-Brown, one of its third-grade teachers. On January 25, 2012, Ray-Brown filed suit against the District alleging that she was unlawfully harassed and subjected to a hostile work environment based on her race and that she was retaliated against for opposing unlawful discrimination. The District denied the allegations and filed for summary judgment, arguing that Ray-Brown failed to make a prima facie case of discrimination or retaliation. After a hearing, the trial court granted the District's motion for summary judgment.

On appeal, Ray-Brown contends that the trial court erred in granting the District's motion for summary judgment because: (1) she established a prima facie claim of discrimination, (2) she established a prima facie claim of retaliation, and (3) she provided evidence to establish that the District's proffered reasons for terminating her were pretextual.[1]

We affirm the trial court's ruling because Ray-Brown failed to make a prima facie case for either (1) discrimination or (2) retaliation.

Working under a probationary contract, Ray-Brown, an African-American woman, began working for the District during the 2009–10 school year as a first-grade teacher at the J.L. Everhart Magnet School. For the 2010–11 school year, still working under a probationary contract, she was assigned to teach third grade.

---

[1]Because we resolve issues one and two against Ray-Brown, we do not address issue three.

In September 2010, John York, the caucasian principal of the school at that time, came to Ray-Brown's classroom, removed a white student from the class, and transferred that student to a third-grade class with a white teacher. After the transfer, Ray-Brown reported to York that the manner in which the transfer took place "was a race issue." Ray-Brown alleged that, after this incident, York retaliated against her by treating her differently from teachers who are other than African American.

She reported to York that her coworker, Takeisha Jones, an African American, threatened her with physical violence and that Jones was actively trying to sabotage Ray-Brown's employment with the District. Ray-Brown alleged that York failed to take remedial or corrective action after receiving her complaints against Jones. Ray-Brown contends that York placed an oppressive workload on her by forcing her to coach students to compete in the UIL reading and ready writing competition.

From late November 2010 through late January 2011, York placed Ray-Brown on an Intervention Plan for Teacher in Need of Assistance (Intervention Plan). York testified that no other third-grade teacher was placed on such a plan during that year.

Ray-Brown argued that York ignored her complaints of discrimination and harassment and that York improperly performed his appraisal for her "summative annual appraisal report" while she was directing the assigned UIL extracurricular activity.

York's evaluation found Ray-Brown's performance to be deficient. Based on that conclusion, York recommended to the District's Board of Trustees that Ray-Brown's contract

3

not be renewed. On or about March 8, 2011, Ray-Brown was informed by letter that her contract would be terminated June 6, 2011.

On March 29, 2011, Ray-Brown submitted a written grievance against York and Jones. After her grievance was denied, Ray-Brown filed suit against the District under Chapter 21 of the Texas Commission on Human Rights Act (the Act), alleging discrimination based on race and retaliation for opposing racial discrimination. The District answered and moved for summary judgment, arguing that Ray-Brown failed to make a prima facie case of discrimination or retaliation. The trial court agreed with the District and granted summary judgment.

As the District's motion for summary judgment asserted that Ray-Brown failed to make a prima facie case, we review this as a no-evidence summary judgment. Because a no-evidence summary judgment is essentially a pretrial directed verdict, we apply the same legal-sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict. *Wal–Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex. 2002). We must determine whether Ray-Brown produced any evidence of probative force to raise a fact issue on the material questions presented. *See id.*; *Woodruff v. Wright*, 51 S.W.3d 727, 734 (Tex. App.—Texarkana 2001, pet. denied). Ray-Brown will have defeated the District's no-evidence summary judgment motion if she presented more than a scintilla of probative evidence on each element of her claim. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003); *Jackson v. Fiesta Mart, Inc.*, 979 S.W.2d 68, 70–71 (Tex. App.—Austin 1998, no pet.).

In our review, we consider all the summary judgment evidence in the light most favorable to Ray-Brown, disregarding all contrary evidence and inferences. *See Merrell Dow*

4

*Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). When a trial court's order granting summary judgment does not specify the ground or grounds relied on for its ruling, summary judgment will be affirmed on appeal if any of the theories advanced are meritorious. *Hill v. Bartlette*, 181 S.W.3d 541, 544 (Tex. App.—Texarkana 2005, no pet.) (citing *Star–Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995)).

*(1)     Ray-Brown Failed to Make a Prima Facie Case for Discrimination*

Ray-Brown contends that the trial court erred in granting summary judgment because she established a prima facie case for racial discrimination, based at least in part on an alleged racially hostile work environment.

In reviewing discrimination cases under the Act, we apply the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Exxon Mobil Corp. v. Hines*, 252 S.W.3d 496, 508 (Tex. App.—Houston [14th Dist.] 2008, pet. denied); *see also Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 142–43 (2000) (discussing development of burden-shifting scheme). To prevail on a claim under the Act, the plaintiff is first required to present a prima facie case of discrimination. *Reeves*, 530 U.S. at 142. To support a discrimination claim based on a hostile work environment, Ray-Brown must show that: (1) she belongs to a protected group, (2) she was subjected to unwelcome harassment, (3) the harassment complained of was based on membership in the protected group, (4) the harassment affected a term, condition, or privilege of employment, and (5) the defendant knew or should have known of the harassment, yet failed to take prompt remedial action. *Felton v. Polles*, 315 F.3d 470, 484 (5th Cir. 2002). To the extent Ray-Brown is alleging harassment by a supervisor,

she need only show evidence supporting the first four elements. *Celestine v. Petroleos de Venez*, 266 F.3d 343, 353 (5th Cir. 2001).

The parties do not dispute that Ray-Brown is a member of a protected class due to her race, black or African American.

To be actionable, an atmosphere of hostility, based on a protected trait, must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. *See, e.g.*, *Penn. State Police v. Suders*, 542 U.S. 129, 146–47 (2004) (hostile-work-environment standard in statutory discrimination case); *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 805–06 (Tex. 2010) (constructive discharge and hostile-environment legal standards).

A hostile work environment must be both objectively and subjectively offensive. *City of Houston v. Fletcher*, 166 S.W.3d 479, 489 (Tex. App.—Eastland 2005, pet. denied). In determining whether an environment is sufficiently hostile or abusive, courts consider the totality of the circumstances, including frequency and severity of the conduct, whether the conduct is physically threatening or humiliating or a merely offensive utterance, and whether the conduct unreasonably interferes with the employee's work performance. *Id*. A hostile-work-environment claim is designed to address conduct that is so severe or pervasive that it destroys an employee's opportunity to succeed in the workplace. *Id*. at 490. The law's overall goal of equality is not served if a claim can be maintained solely based on conduct that wounds or offends but does not hinder an employee's performance. *Id*.

Ray-Brown identified specific incidents of alleged harassment. In September 2010, without notifying her of an impending student transfer, York entered her classroom "unannounced, interrupted her lesson, disregarded her, ignored her when she tried to inquire as to what was going on[, . . .] embarrassed her" in front of her students and the transferred student's parent or guardian, removed a white student from her class, and placed that student in a class with a white teacher. Ray-Brown alleges that non-black teachers were not treated in a similar manner, though she has not furnished or cited any evidence to support that allegation. Ray-Brown alleged that it was common practice for York to give prior notification of a transfer, as evidenced by an email from York to Ray-Brown and another teacher informing them that a student would be transferred from one teacher's classroom into Ray-Brown's, though there is no evidence of a school or District procedure for moving a student from one class to another.

Ray-Brown also contends that York gave her an oppressive workload in an attempt to create the appearance of performance deficiencies by assigning her to coach "UIL Grade 3 Ready Writing" as part of an academic contest. The uncontroverted evidence established that Brittany Kendrick, the UIL coordinator, assigned teachers to certain UIL tasks, though York admitted that he could approve or disapprove those assignments. The evidence Ray-Brown produced in response to the District's motion for summary judgment shows that numerous other teachers, from grades two through five, including three other third-grade teachers, were assigned similar work. During Ray-Brown's grievance process, she alleged that this higher workload fell predominantly on African-American and Hispanic teachers, though the record before us contains no evidence of the race of the other teachers so assigned or not so assigned.

7

In early November 2010, York visited Ray-Brown's classroom and conducted a forty-five-minute appraisal of her teaching. During the last twenty minutes of the evaluation, Ray-Brown was working with a few students in preparation for the UIL competition. She received rather low marks on her appraisal and argues that York's appraisal violated Section 21.353 of the Texas Education Code, which states in part that a teacher "shall be appraised only on the basis of classroom teaching performance and not on performance in connection with extracurricular activities." TEX. EDUC. CODE ANN. § 21.353 (West 2012).

Ray-Brown also complained of being harassed by coworker Jones and that York did little, if anything, to remediate the problem. Like Ray-Brown, Jones was a black female third-grade teacher at the District. Ray-Brown alleged that Jones was rude to her in front of students and that, in the fall of 2010, Jones threatened to physically assault her. Ashley Booker's email, which Ray-Brown uses to support this allegation, shows that Jones "walked towards Mrs. Ray," making it unclear whether "Ms. Jones was going to lunge at Mrs. Ray or just get in her face"; Jones did the latter and began yelling at Ray-Brown. A heated verbal exchange took place, and Booker got between them. At the time, Booker, a black female, was also a third-grade teacher for the District.

Ray-Brown also alleges that, at other times, Jones tried to sabotage Ray-Brown's employment with the District by reporting that Ray-Brown was absent from a workshop she was required to attend. She also alleges that Jones followed her into the breakroom and started

"keeping tabs" on her and her whereabouts.[2]  Both Ray-Brown and Jones reported the conflicts to York.

Viewing all the evidence in the light most favorable to Ray-Brown, as we must, and considering the foregoing circumstances cumulatively, we conclude that there is no more than a scintilla of evidence that Ray-Brown was subjected to hostile-work-environment discrimination. Here, there is no objectively offensive conduct that was physically threatening or humiliating, and no evidence that Ray-Brown's work performance was unreasonably impeded.  Considering the frequency, severity, and nature of the incidents as alleged by Ray-Brown, there is no evidence that the District was permeated with discriminatory intimidation, ridicule, or insult; therefore, Ray-Brown failed to proffer evidence of actionable harassment.  Even if the incidents were actionable, Ray-Brown failed to provide evidence, other than conclusory allegations and speculation, that any harassment she received was based on her race.  *See TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002) (nonmovant cannot defeat summary judgment by presenting conclusory "allegations and denials, speculation, improbable inferences, unsubstantiated assertions and legalistic argumentation.").  Ray-Brown failed to make a prima facie case of either hostile-work-environment or general race-based discrimination.

*(2)     Ray-Brown Failed to Make a Prima Facie Case for Retaliation*

In her second point of error, Ray-Brown contends that the trial court erred by granting the District's motion for summary judgment because she made a prima facie case of retaliation for opposing discrimination.

---

[2]Ray-Brown's brief does not cite anything, other than Jones reporting Ray-Brown's absence to the principal's office, to support her allegation that Jones was "keeping tabs on her."

9

The Act provides that "[a]n employer . . . commits an unlawful employment practice if the employer . . . retaliates or discriminates against a person who, under this chapter: (1) opposes a discriminatory practice; (2) makes or files a charge; (3) files a complaint; or (4) testifies, assists, or participates in any manner in an investigation, proceeding, or hearing." TEX. LAB. CODE ANN. § 21.055 (West 2006). To establish a prima facie case of retaliation, Ray-Brown must show that (1) she engaged in one of the protected activities listed in Section 21.055 of the Texas Labor Code, (2) an adverse employment action occurred, and (3) a causal link exists between her participation in the protected activity and the adverse employment action. *See Green v. Lowe's Home Ctrs., Inc.*, 199 S.W.3d 514, 518 (Tex. App.—Houston [1st Dist.] 2006, pet. denied); *see Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67–68 (2006).

In her deposition, Ray-Brown testified that, after York transferred the white student from her class in September 2010, she "talked to John York in September and after and the [child's parent or guardian] came to my classroom -- and I told him I believed that that was a race issue." At some point "before Christmas" 2010, after a faculty meeting, Ray-Brown had a private conversation with York and reported that Jones and York himself were harassing her. These incidents occurred months before York's recommendation to the board to not renew Ray-Brown's contract and before she received notification of the board's decision to terminate her contract.[3]

---

[3]This is the only factual evidence she cites in support of her retaliation claim. The record shows that she made other "outcries of discrimination," but she made them after she was notified of her impending termination.

The record shows Ray-Brown reported Jones' behavior; however, there is no evidence in the record of any complaint against York until after Ray-Brown was notified that her contract would not be renewed.  In short, Ray-Brown contends that, after she reported to York about the transfer "race issue" and the harassment by Jones and York himself, York made false statements on her performance appraisals and subsequently recommended Ray-Brown's contract not be renewed.

We find that Ray-Brown failed to make a prima facie case that she participated in a protected activity.  Her statement that the transfer was a "race issue" does not reflect opposition to a practice of York or the District, and until she was notified of her impending termination, she made no further complaint or follow-up regarding that particular student transfer or any other student transfer.  Similarly, Ray-Brown made no complaint against York until after she was notified that her contract would not be renewed, and therefore, even if her statement that the transfer was a "race issue" amounted to opposing discrimination, she failed to make a prima facie case that a causal link existed between her statement and York's recommendation not to renew her contract.

Due to our rulings on Ray-Brown's first two points of error, we do not address her third point of error.[4]  We affirm the trial court's summary judgment.


Josh R. Morriss, III
Chief Justice

Date Submitted:        August 30, 2013
Date Decided:          September 26, 2013

---

[4]If a plaintiff meets the burden to establish a prima facie case of retaliation, the burden shifts to the defendant to demonstrate a legitimate, nondiscriminatory purpose for the adverse employment action.  *Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 487 (5th Cir. 2004).  The plaintiff then assumes the burden to present proof that the stated reason was pretextual.  *Gonzalez v. Champion Techs., Inc.*, 384 S.W.3d 462, 466 (Tex. App.—Houston [14th Dist.] 2012, no pet.). "To carry this burden, the plaintiff must rebut each non-discriminatory or nonretaliatory reason articulated by the employer." *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007).  In her third point of error, Ray-Brown contends that the trial court erred because she offered evidence that the District's proffered reasons for the adverse employment action taken against her were pretextual.  However, as Ray-Brown failed to make a prima facie case of retaliation, we need not address this issue.